UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOSEPH MADRID,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, et al.,<br><br>Defendants. | Case No. 1:18-cv-00947-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANTS A. DE LA CRUZ AND M. LOPEZ FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, RETALIATION, UNREASONABLE SEARCH, AND EXCESSIVE FORCE, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

David Joseph Madrid ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on July 13, 2018. (ECF No. 1).

The Court has screened the complaint to determine if Plaintiff has sufficiently alleged facts to state cognizable claim(s). For the reasons described below, the Court recommends allowing this case to proceed past the screening stage on Plaintiff's claims against Defendants A. De La Cruz and M. Lopez for deliberate indifference to serious medical needs, retaliation,

1

an unreasonable search, and excessive force.  The Court also recommends dismissing all other defendants and claims without leave to amend.

Plaintiff may file objections to these findings and recommendations within twenty-one days from the date of service of these findings and recommendations

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

*pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's claims arise out of his treatment at a medical facility following an altercation at a prison.

According to Plaintiff's complaint, on November 8, 2016, there was an incident at Kern Valley State Prison involving Plaintiff in which Plaintiff was badly injured. He required emergency transportation to an outside hospital. Plaintiff suffered from a pierced lung, among other injuries.

Plaintiff was escorted by Defendant Correctional Officers A. De La Cruz and M. Lopez.

While awaiting and during transportation, Plaintiff requested that the pepper spray that remained on his face and body be cleaned. He repeatedly asked for some form of decontamination. These pleas were ignored. The E.M.T.'s responded that it was a corrections issue. Defendants De La Cruz and Lopez said it was not their decision either. A female nurse heard Plaintiff's pleas, and inquired if she could wipe some of the spray off. Defendants De La Cruz and Lopez ignored the question. The nurse then wiped circles around Plaintiff's eyes, allowing better vision.

Once at the hospital, there was a delay in being seen. Plaintiff asked for a physician or nurse to be called. Defendant De La Cruz responded, "they'll come when they come," with an aggressive demeanor.

Plaintiff was later moved to a different location for a full-body CAT-scan. Defendant De La Cruz applied plastic ties so tightly that Plaintiff's hands and wrists became discolored. Plaintiff brought this to the attention of both Defendants De La Cruz and Lopez, who ignored Plaintiff. Plaintiff again requested decontamination because of the small space of the CAT-scan, but his pleas were again ignored.

Fifteen to twenty minutes into the CAT-scan, it was turned off. Defendants De La Cruz and Lopez approached Plaintiff and accused him of having something in his rectum. They threatened to hit Plaintiff if Plaintiff attempted to get rid of it. There was a female nurse in the room at the time. An unidentified technician said that the CAT-scan was not concluded, and

3

Plaintiff was again put into the CAT-scan machine.

At the conclusion of the scan, the Defendants De La Cruz and Lopez again approached Plaintiff with their batons fully extended. They told the nurse to gather all linen from Plaintiff's bed area. Defendant De La Cruz ordered Plaintiff to "Get to [his] feet! Remove all your clothing!" Defendant De La Cruz said in a humorous and sarcastic tone, "A rectum exam would be good." Defendant De La Cruz then again demanded that Plaintiff get to his feet. Plaintiff advised Defendants De La Cruz and Lopez that this was not possible without assistance. They then forced Plaintiff to get to his feet, ignoring the advice given by the physician. Plaintiff's wounds began to bleed. Defendant De La Cruz ordered Plaintiff to remove all his clothing. After Plaintiff removed his clothing, Defendant De La Cruz conducted a search of Plaintiff's buttocks and rectum. The female nurse was present.

Plaintiff claims that Defendants De La Cruz and Lopez made joking and inappropriate remarks during the search, which were meant to humiliate him in front of the female nurse. Defendants De La Cruz and Lopez retrieved contraband as a result of this search. Plaintiff claims that prior to the search, Defendants De La Cruz and Lopez had already located the contraband because they were given an exact image on the CAT-scan.

Plaintiff was again restrained in a way that caused him pain.

Plaintiff alleges that Defendants De La Cruz and Lopez then engaged in "small-talk" with other medical staff about the contraband. Plaintiff alleges that the Defendants De La Cruz and Lopez intended to belittle, embarrass, and humiliate Plaintiff.

Plaintiff alleges that the Defendants De La Cruz and Lopez also disrupted communication between Plaintiff and medical staff by talking about Plaintiff and saying things like "he thinks he's crazy."

Plaintiff describes a discussion with a nurse that appears to show that the nurse was hesitant to give him pain medication due to the contraband and his alleged drug use. Plaintiff also alleges that Defendant De La Cruz told the nurse to get Plaintiff to admit to having contraband before giving him pain medication.

Plaintiff also alleges that Defendants De La Cruz and Lopez discussed his situation with

medical staff in a way that was designed to scare away medical staff. They did this so that Plaintiff would continue in his state of pain and suffering.

Plaintiff describes a preliminary examination in municipal court related to the allegation. During that examination, Defendant De La Cruz denied knowing who was in the room when he searched for the contraband. Plaintiff asserts that this is a lie. Plaintiff states that the case was still ongoing at the time of filing this complaint. Plaintiff states that he also has a pending habeas corpus petition related to this claim.

In the section regarding legal claims, Plaintiff lists various allegations against other defendants, including the taking of Plaintiff's property, deliberate indifference to his medical needs, and other claims. There are no supporting factual allegations related to these assertions and they appear wholly unrelated to the central incident in the complaint.

Plaintiff attached an exhibit list to his complaint, but no exhibits are attached.

### III. DISCUSSION

#### A. Unrelated Claims

As an initial matter, Plaintiff has brought numerous claims that do not appear to be related to the central incident alleged in the complaint. Plaintiff complains that his property was repeatedly taken, that he did not receive adequate medical care after he returned to his institution of confinement, that he was denied his right to a speedy trial, that he was denied representation, and that evidence was withheld. In addition to not being related to the central incident alleged in this case, Plaintiff has not pled any facts related to these claims.

As Plaintiff has failed to plead any facts related to these claims, and as they do not appear to be related to the central incident alleged in the complaint, the Court recommends that these claims be dismissed without prejudice.

#### B. Defendants

Plaintiff lists at least ten defendants, including wardens, doctors, and correctional officers from two different prisons.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there

must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

The Court recommends dismissing all claims against defendants other than Defendants A. De La Cruz and M. Lopez because there are no facts tying any other defendants directly to the constitutional violations alleged in the complaint.

### C. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

Plaintiff alleges that Defendants A. De La Cruz and M. Lopez refused to allow any decontamination of pepper spray during and after transportation to the medical center.  Nor did they perform any decontamination before Plaintiff was in the confined inside a CAT-scan machine.  Plaintiff alleges he was in pain and also had difficulty breathing, and that there was no justification for the refusal to treat him.

Plaintiff also alleges that Defendants De La Cruz and Lopez repeatedly interfered with his medical care, and ordered him to participate in a strip search in a manner that went against a physician's orders and exacerbated his condition.

Accordingly, the Court recommends that Plaintiff's claim for deliberate indifference to serious medical needs against Defendants De La Cruz and Lopez proceed past screening.  The Court is not holding that Plaintiff will prevail, but Plaintiff has sufficiently alleged facts to proceed on this claim.

### D. Unreasonable Search

The Fourth Amendment prohibits only unreasonable searches.  Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  Bell, 441 U.S. at 559.  Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Id.; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (en banc).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." Michenfelder, 860 F.2d at 333 (9th Cir. 1988). The United States Court of Appeals for the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963); see also Michenfelder, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332.

However, "we cannot assume from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited." Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc). For example, "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." Michenfelder, 860 F.2d at 334 (citing Grummett v. Rushen, 779 F.2d 491, 494–95 (9th Cir. 1985)) (parallel citation omitted)

This Court recommends allowing a claim against Defendants De La Cruz and Lopez to proceed regarding a potentially unconstitutional cavity search conducted for an unnecessarily long period of time while Plaintiff was seriously injured and in the presence of a female nurse. The Court appreciates that contraband was found at this search, and that the nurse was present for the medical procedure. It may be that the search was reasonable under the circumstances. Nevertheless, Plaintiff has stated a colorable claim that can proceed past screening.[1]

### E. Excessive Force Based on Restraints

"When prison officials use excessive force against prisoners, they violate the inmates'

---

[1] This claim may overlap with pending criminal proceedings and be subject to dismissal or abstention of that basis. Given the limited information regarding Plaintiff's criminal case, the Court is not deciding if that criminal case would affect these claims at this time. Defendants may bring an applicable motion if they wish to raise such issues in the future.

9

Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

"[O]verly tight handcuffing can constitute excessive force." Wall v. Cnty of Orange, 364 F.3 1107, 1112 (9th Cir. 2004) (Fourth Amendment claim). "The Ninth Circuit has held that excessively tight handcuffing can constitute [excessive force], but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." Dillman v. Tuolumne County, 2013 WL 1907379 at *8 (E.D. Cal. 2013) (citing Wall v. County of Orange, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee suffered nerve damage as a result of continued restraint in tight handcuffs). Cf. LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee complained to officer who refused to loosen handcuffs); Palmer v. Sanderson, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (arrestee's wrists were discolored and officer ignored his complaint), with Hupp v. City of Walnut Creek, 389 F.Supp.2d 1229, 1233 (N.D. Cal. 2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight).

Plaintiff alleges that prior to his CAT-scan he was unreasonably restrained with ties that

cut off his circulation, and that after his CAT-scan he was again restrained in a way that caused pain.

Based on these allegations, the Court recommends allowing the claim against Defendants De La Cruz and Lopez for excessive force regarding the restraints to proceed past screening. The Court is not finding that Plaintiff will prevail even upon the alleged facts, but that the issue is a highly factual one that should not be decided at the screening stage. Plaintiff has sufficiently alleged that his restraints caused pain, and that Defendants De La Cruz and Lopez ignored his complaints about the pain.

### F. Retaliation

There are five basic elements to a First Amendment retaliation claim: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005).

However, retaliation claims are not limited to the First Amendment. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985)." Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994). Exercising the Fifth Amendment right against self-incrimination can be protected conduct. Bridges v. Hubbard, No. CIV S-09-0940 TLN, 2013 WL 3773886, at *9 (E.D. Cal. July 17, 2013), report and recommendation adopted, No. 2:09-CV-0940 TLN DAD, 2013 WL 5230239 (E.D. Cal. Sept. 16, 2013) (finding that Plaintiff was engaged in protected conduct when he exercised his Fifth Amendment right against self-incrimination).

Here, Plaintiff has alleged that he would not admit that the contraband was his. Defendant De La Cruz then directed a nurse not to provide Plaintiff with pain medication until he would admit that the contraband was his. The nurse then conversed with Defendants De La Cruz and Lopez, but would continue to question Plaintiff regarding whether the contraband was

11

his. The nurse told Plaintiff that she would give him medication if he admitted the contraband was his. During the conversations between the nurse and Plaintiff, Defendants De La Cruz and Lopez would move in closer so as not to miss any words.

Based on these allegations, the Court recommends allowing Plaintiff's retaliation claim against Defendants De La Cruz and Lopez to proceed past the screening stage.

### G. Sexual Harassment

Sexual harassment or abuse of an inmate by a corrections employee is a violation of the Eighth Amendment. Wood v. Beauclair, 692 F.3d 1041, 1045-46 (9th Cir. 2012) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)) ("In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse...."). "[S]exual contact between a prisoner and a prison [employee] serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society. Where there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" Wood, 692 F.3d at 1050-51 (quoting Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999)). Even sexual contact that is not violent and leaves no physical injury is presumed unlawful when committed with malicious and sadistic intent. Id.

While Plaintiff was subjected to a strip search, there are no allegations that anything sexual was said to Plaintiff, or that there was any sexual contact between Plaintiff and Defendants De La Cruz or Lopez. While the search may have been conducted in a manner designed to harass Plaintiff (which is why the Court is recommending that his unreasonable search claim be allowed to proceed), there are no allegations that suggest the harassment was sexual in nature.

Accordingly, the Court recommends that Plaintiff's sexual harassment claim be dismissed.

### IV. CONCLUSION AND RECOMMENDATIONS

The Court recommends allowing Plaintiff to proceed against Defendants A. De La Cruz and M. Lopez on claims for deliberate indifference to serious medical needs, retaliation,

unreasonable search, and excessive force.[2]  The Court recommends that all other claims and defendants be dismissed, as discussed above.

The Court does not recommend granting leave to amend because Plaintiff has already provided detail regarding the incident in question and the Court does not believe that further facts would result in further claims.  Thus, amendment would be futile.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 24, 2018**              /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE

---

[2] Based on Plaintiff's allegations, it appears that there may be an ongoing criminal proceeding related to at least some of these claims.  Thus, while the Court is recommending that these claims be allowed to proceed, the Court is not precluding any party from filing a motion for abstention.

13